UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI-DADE DIVISION

FILED BY __P6__ D.C.

JUN 03 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

'BUD MILLER' (INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARY
SITUATED] PROPOSED CLASS ,
PETITIONERS ,

Vs.

FLORIDA DEPARTMENT OF CORRECTION
SECRETARY: MARK S. INCH , AND
WARDEN LOVE, DADE CORRECTIONAL
INSTITUTION, (IN THEIR RESPECTIVE
OFFICIAL CAPACITY)

CIVIL DOCKET No.:

EMERGENCY IMMEDIATE RELIEF

PETITION FOR WRIT OF HABEAS CORPUS,
DECLARATORY AND INJUNCTIVE RELIEF.

## (A) Introduction

1   PETITIONER, ALLEGES THE Global Pandemic Coronavirus (Covid 19) now POSES EXTREME DEATH AND PERSONAL SERIOUS Bodily INJURY TO PETITIONER AND CLINICALLY HIGHLY-VULNERABLE IMPRISONED Elderly and disabled AT Florida DEPARTMENT OF CORRECTIONS Facility 463 (DCI). PETITIONER AND CLASS Proposed ARE immunecompromised, and have RESPIRATORY CHRONIC DISEASES AND ARE AGE 65 TO 95 YEARS OF AGE, OR have SERIOUS SPECIALIZED disability needs. RESPONDENTS cannot provide for reasonable meaningful safety.

2   RESPONDENTS PRISONS are shockingly overcrowded, which compounded with Covid 19  Petitioners allege deprivation of basic human needs violate AND Abridge the Eighth Amendment of The Bill of Rights to the United States Constitution , to be free from "Cruel and unusual — punishments." Covid 19 poses unreasonable RISK of future harm and death

By Certified USPS mail  #9590 9402 5674 9346 4974 63  (May 29, 2020)

- tantamount to a sentence of death the sentencing court(s) held no such intent, nor impose upon Petitioner. Accordingly Respondents cannot remove the elephant from the room under policies, practices, or procedures, that protect.

## (B) Jurisdiction and Venue

3    The court has exclusive jurisdiction pursuant to provisions Title 28 United States Code, Section 2241 (c)(3), as alleging a federal question of law and fact, and concurrent jurisdiction over the Constitution, and declaratory (28 U.S.C. § 2201), and injunctive relief pursuant to 28 U.S.C. § 2202, 28 U.S.C. § 1331, and Art.1 & Cl9 of The Constitution.

4    Venue is proper as the Proposed Class Members, Class Representatives, and Sub Classes Members are currently housed at DCI (#466) in Miami-Dade County at Homestead Florida, where incidents events conditions have, will continue to pose serious immediate life threats to Petitioner and the Proposal Class members defined infra.

## (C)   Parties

5    Petitioner, Bud Miller (R.LS.M.), is a Proposed Class Representative currently housed at DCI, and is seventy two years, a law student in Legal Writing English 106, Florida International University, a seminarian at Miami International Theological Seminary (M.I.N.T.S.), a Legionnaire Charter Exec. Post Service Office Indiantown Post 318, District 11, Department of Florida and honorably discharged United States Marine Corps Vietnam era vet, son of WWII US Navy Vet BB.34 U.S.S. New York, nephew of U.S. Air Force - Korean War Vet.

6    Respondent Mark S. Inch is Secretary of 'Florida Department of Corrections' 501 S. Calhoun Street, Tallahassee, Florida 32399
Respondent Love (Fnu) is Warden of Dade Correctional Institution, 19000 SW 377th Street, Florida City, Florida 33034-6499

2.

10-C

(D)   (D)   Immediate Relief Is Needed To Prevent Further Unnecessary Suffering, Loss of Life

12   From The onset and exponential daily virus spread, every State and territory in the United States, since the first reported (St in washington state) in a few months rapidly exploded to over 85,000 deaths, and 1.4 million infected, confirmed Covid 19 (DNA strand), according to sources reported to The Centers For Disease Control and Prevention.

13   Cramped severely overcrowded and understaffed Prisons amplify this pandemic threat, and prisoners are in overheated confined spaces, so close, so inhumane, and breathing poorly ventilated, air particulates such as the airborne Covid 19, Dengue fever, Ebola, and other viruses'[1] already in south Florida. Dangerously and fundamentally incompatable with medically clinically protocols for "social distancing" and reasonable hygiene, presenting a grave threat not only to staff and prisoners, but to the broader community.

14   Dangers play out discord with disasterous consequences of the rapid deaths of Covid 19 respiratory virus.

15   Even the most professional efforts of highly skilled medical specialists usually fail. Respondents are not prepared, nor equipped, to put up a defense understated conditions and population levels. No policy, rule or regulation Respondents can use will prevent further Covid 19 rampage upon the captive audience, of the Proposed Class.

16   In addition to service of process, Petitioner or counsel will contact the Respondents, U.S. Attorney Office, and general counsel for (boc) and will provide a courtesy copy of this Petition and all attachments by e-mail in order to provide actual notice on expedited emergency basis.

---

[1] WestNile Virus are endemic to Florida

4.

D

17. Currently no Covid 19 vaccine is discovered, If a vaccine is discovered, Production and distribution will take a minimum of eighteen months. For Clinically Vulnerable sub class members (proposed) that will be far too late. Covid 19 Global Pandemic, of Coronavirus (genre) is an exponentially and extremely deadly Virus of respiratory pneumonia, Petitioners cannot be protected from incarcerated by Respondents

18. The United States Department of Health and Human Services has already recommended immediate Categorial mass release of the Medically-clinically Vulnerable in Federal Bureau of Prisons, And in State's prisons. Petitioners sub class are immunocompromised, another Virus infection is tantamount to A death sentence.

19. An order of the Court for immediate custody release by way of 28 U.S.C. § 2241 (c)(3), for clinically Vulnerable will have certain impact on prison overcrowding conditions that are inhumane, staffing concerns for safety and medical staff, the local Community and sub class Vulnerable class.

20. Given this Unique set of Circumstances, " release is the only acceptable option " Wilson V. Williams USDC (NDOH) Cw. #4:20-CV-00794, Fn. 139 at 76. That Court noted that "Even a lengthy prison sentences)"... did not include incurring great unforeseen risk of severe illness or death "" The Elkton, EBOP (Ohio) Attorney General " recognized the Significant level of infection (could) Suggested immediate release immediately, (the infected or uninfected) Vulnerable prisoners to home confinement." Wilson, Id. Fn 139

21. During the interim period, May 16-23, 2020, Covid 19 deaths exponentially bounded from approximately, U.S. deaths 86,000, to a shocking 49,000, in one week. The Virus is exponentially deadly. 1/ 110,000 5/30/2020

22. Before signing "The Coronavirus Aid, Relief, and Economic Security Act" (C.A.R.E.S.), President Trump noted that "Prison Commissioners (Secretary) have requisite authority to release prisoners." The Covid 19 virus relief and Petitioners Class (proposed) have a modicum of hope, for blessed relief, from very dire consequences of infection airborne

23. Petitioner(s)(proposed Class) therefore accordingly seek the immediate Court ordered relief within twenty-(24) four hours by grant of declaratory and injunctive relief pursuant to 28 USC § 2241 (c)(3) Writ of habeas corpus.

24. The proposed Class Action may be properly maintained as the threshold requirements are met which satisfies numerosity, and commonality, as well as, typicality as the proposed Class will represent over one hundred to five hundred (100-500) DCI Current Prisoners who meet the medical criteria who have chronic diseases that make them vulnerable to Covid 19 infection

25. The court has exclusive jurisdiction of the Federal question of Constitutional law and fact alleged here pursuant to Federal Rules of Civil Procedure, Rule 23 (a).

26. Joinder is impracticable as proposed Class members are numerous and include future members "similarly situated," and the Class are Currently or in the future, are currently prisoners at DCI (FDOC) and are hindered from ability to institute and maintain an individual lawsuits for relief.

27. Courts are closed, University studies are closed, businesses closed, due to Covid 19, and DCI mens and womens prisons are quarantined Petitioner, (Bud) is on respiratory bi pap, catheter, and wheelchair bound.

32. RESPONDENTS, appear unwilling to Control cease and desist a near Constant overwhelming smoke partial pressures in day and night atmosphere — in this Americans With Disabilities (ADA) open bay dorm of over Seventy two men, of whom over one dozen smoke day and night — on video surveillance recordation cameras, in violation of "Prohibited Conduct in any state (facility) buildings" "Florida Indoor Clean Air Act" Florida Statute, §944.15. That particular group are mostly age 21 to 30 age group, affiliated with others in other activities forbidden by law Federal.

33. Petitioner, being a respiratory-pulmonary patient is Compelled to go along with obviously dangerous second hand smoking of neurotoxic chemical additive "Killers" (wasp spray) (formaldehyde), and end result for Petitioner is the nexus of operative fact of respiratory Complications; an invitation for Covid 19 infection, where Metevir Stage IV affirms severe liver complications due to the liver defective process of poisons inhaled or otherwise presented. At issue along with Covid 19 like threat, Respondents malice aforethought Violates Petitioner (Bud) fundamental constitutional right to recieve the Safety from severe bodily harm; while those individuals Commit suicide.

34. The systemic encouraged, enlisted, continuing conspiracy of RICO Violations, are routinely supplied by Corrupt personnel in 26 prisons t Petitioner has been. Therein lies the consistent retributions toward Petitioner his personal property, health and welfare, leading to severe retributions, threats, life threats and numerous attempted murder(s) of Petitioner — at over seven (7) prisons, and numerous recommendations by U.S. District Courts Pensacola, Tallahasse, Jacksonville, under "Standing orders!"

35. The Respondents (facility level) method of discipline at DCI, inter alia., is a few days "vacation" in Confinement and rapid return to general population — in an alleged ADA facility. "Because punishment is not swiftly applied, the heart of man is set in him to do evil." (paraphrase Eccl.)

7.

36. (E) <u>This Petition Is An Appropriate Vehicle For Relief To Enforce and Remedy Violation of Constitutional Rights</u>

Pursuant to provisions of 28 U.S.C. § 2241 (c) (3) for Writ of Habeas Corpus for immediate release of, "Violation of the Constitution" (Eighth Amendment) <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 485 (1973)

37. Accordingly, Respondent's failure to protect safety, health threats, and numerous daily serious threats, cannot safely, humanely provide immediate medically required steps; procedures, practices, rules that nominal gestures that will prevent Covid 19 infection and death for the Medically-Vulnerable class who have chronic histology, morphology of certain diseases, See,    , moreover the saturation point of the prison gang(s) activities and murders. Yet, West Coast states, inter alia have a simple solution seperation isolation cell individually in gang member prisons permenantly or at minimum ten (10) years

38. Respondent's contract Health Services Provider Centurion, LLC® personel for fifteen (15) months, at DCI alone, state "We ordered the Bipap power cord (Rem Star Res Med Pro III Bipap), yet sleep apnea is not resolved on standard CPAP machine sleep ten (10) hours — but is on BiPap resolved entire day — after only five hours usage.

39. Petitioner's wheelchair, at "wheelchair repair" (Tue/Thur 3-5) directive to inmate "mechanic", from Nurse/ADA Morales - "sabotage the bearings" and the wheelchair is virtually inoperable for Petitioner or any other as bearings (needle) are broken, split, or rusted. The nurse does not think Petitioner is a little more cognizant of Spanish language directives, and refuses to issue a replacement for Petitioner after 2 or 3 shipment delivery of numerous new wheelchairs. The change of attitude toward Petitioner was after MDSO discovery. Elderly disabled wheelchair-bond are primary targets of gang members.

E

40    ADA dorms and DOC refuse to remove all upper bunks, and then align the lower bunk parallel to outer walls, thereby open up 60" clear fire egress aisles around the five end-to-end rows of ADA center rows beds for wheelchairs and respiratory power heads. As well as security viewing.

41    Respondents refuse to cease all unauthorized use of ADA power outlets used for heating water (hot water is precluded on water fountain) and also pass plastic buckets over Potatine Steams head while sleeping—imposing reckless indifference to high inmates clumsy drop of scalding hot water and serious life threat of third degree burns—also used power for other illicit and dangerous activities—virtually all by gang members—not ADA elderly.

42    Alleged wheelchair beds for ADA have less than 2 feet living space and no accessible ADA toilets, seating and turning spaces; no ADA only signage and no enforcement by staff, with one ADA toilet 16 wheelchairs. @ Winters.

43    Beds currently refuse to be relocated in compliance to "Architectual, Structural Barriers Compliance Board", and CDC head space limits to 1-2 feet.

44    Keeping "social distancing" is impossible when living in extremely confined living space and heads on all sides in one to two feet distances.

45    Sanitation is impossible with prison "caustics" that are used to spray (cover-up) smokers deeds—When caught, staff draw no corrective action and if caught up are immediately released right back to the same bed. No professional home sanitizing chemicals such as pump sprays of Lysol and Purjie products are issued or used—only ineffective efforts and chemical compounds are used—if at all. This procedure accommodates gang and smoker activities—the smoke materials and catalysts are supplied by corrupt personnel the nexus of operation fact for false no action—Rico ongoing activity.

9.

46. Respondents provide (sic) 'caustics' for sanitation and antibacterial anti microbial chemicals, that are not CDC approved for Covid 19 safe living environment, mostly stolen by inmates personal activities. These chemicals are not of industrial strength nor are they similar to Lysol® or Texize® products, inter alia. Thus create a heightened risk of Covid 19 infection and a substantial risk of serious bodily harm.

47. Specialized Medical Disability Treatment is non-existent to Petitioner's urgent needs for treatments and prophlactic health care. Nurse Morales, RN stated multiple times to nurses, doctors, wardens, and corrections personnel "don't give Stearns Miller anything. he's a Chomo (MDSO disabled). Yet, Central Office of the Department Bureau of Support Services issued a permanent pass for wheelchair and mobility and other duties medical pass years ago — now Centurion LLC personnel try to cancel, omit records, or treat Petitioner with disparaty, solely based on race, nationality, mental health needs, or medical treatment for five major life's disabilities that substantially limit Petitioners daily life's activities.

48. The United States District Courts (Pensacola Div.) (Tallahassee Div.) (Jacksonville Div.) each issued e-mails of Standing Court Orders of Protection regarding Petitioner and over seven attempts by gang members to murder that Christian. Yet, after fifteen (15) years of ardous challenges for Petitioner. Respondents servants seem intractible to 21st Century penalogical aims regarding The Americans With Disabilities Act of 1990, Title 42, U.S.C. §§12131-12134, 28 CFR Part 35 (As Amended 2008), The Rehabilitation Act of 1973, 34 C.F.R, pt. 104 i; moreover, As A Miami International Seminary (MINTS) seminarian pursuing Master's 20 USC §§ 1400-1482; 34 CFR pt. 300 "Individuals With Disabilities Education Act."

49. Albiet, Respondents servants seem unable or unwilling to comport management infrastructure to prevent the illicit acts or omission of discriminations, retributions, and non-accomodations toward Petitioners Class.

10.

50. Petitioner (Bud) is lifelong diagnosed and in-patient psychopathic Mentally disordered sex offender since age 5 or 6 automobile roll over, Traumatic Brain Injury to the paralymbic prefrontal orbital cortex (reasoning center) and has been an inpatient at Greenville South Carolina and State hospitals in both California (Atascadero) and (San Bernardino), that apparently is triggered by trauma of seperation anxiety and personal loss of loved ones. For this mental health dysfunction a disability, Respondants allow their personnel to cast Petitioner to raving wolves; due to decades old events of histology and past is past. These acts or omissions clearly irreperably abridge fundamental 8th Amendment constitutional law prohibited conduct by Respondants personnel's vengiful personality as it the sentencing court had some nepharious sanctioned retribution above and beyond the sentence of years?, instead Petitioner has treatable medical and mental health in patient needs Respondants can't meet, nor protect from Covid 19.

51. On or about January 17, 2020 Petitioner had sudden onset of the Covid 19 Symptoms or morphology of severe dry cough, profuse rhinorrhea arthralgias, cephalgias, vertigo, sneezing often, skin flushing rash — for weeks slowly developing into loss of taste, inability to sit up, and raging fever to recede after days and return twice over — during Florida International University legal writing classes, Exchange For Change Classes, MINTS Classes, and Foundations Classes until March, 4 weeks.

52. Upon reporting for medical emergency to DCF Centurion All "Urgent Care Clinic", twice or more, Petitioner was denied exam and ordered to go back to your dorm — sign up for sick call "(again)" seen by ARNP, and the Chief Health Officer — who ordered sonigram and the technician stated "You have bilateral fluid on both lungs and your heart." No specialists were conferred with, and no hospital referral for specialist exam and diagnosis.

53. On or about 2002-03 December — January at Seattle Sea Tac International Airport 8 Chinese Ladies — one coughing into Petitioner there contracted SARS.

54. At the seventh "Intensive Care Unit" (I.C.U.) At University of Florida - UF-Shands Hospital specialists placed Petitioner (Bud) on ventilator, AND had acute respiratory failure and due to rupturered varias, a "Sengstaken-Blakemore" tube was inserted due to rapid profuse blood from hematemesis episodes secondary to portal hypertension incidents. Remaining on ventilator for over one week. September Life Flight from Col X 2017. Diagnosed as acute renal and respiratory failure. Plaintiff has had two (2) eschemic strokes and has residual left side complications.

55. Centurion, LLC. have protocols that only conditions designated by medical (non-specialists) are held within the medical records only those are referred to [sic] treat decades old diseases, injuries, and serious conditions. Petitioner had fulminant liver disease (HcV) (ALD) was 3 weeks intensive care unit in our twenties three went into ICU (HbV) and only Petitioner survived.

56. At no time did Centurion LLC, treat the complications of 1/3 liver destructed and Interferon® was repeatedly refused, All APA appeals denied 16-6-03279

57. For fifteen (15) months at DCI of 12-15 requested Impaired Mobility Assistants. Submitted to ADA nurse Morales, Classification S. Sannez and Howard or. Never was one assigned. Petitioner is constrained to eat scraps if at all on so many missed meals and weight loss, abdominal pain, and vertigo chronic After Respondents retribution violate 8th Am. and Florida Administrative Code, Chapter 33-403.011 FAC, Title 45, CFR Pt. 160; HSB 15.02.05 (DCF-526) assigned duties Assistant skills, and responsibilities - abuse HSB 15.03.33, Yet, RN Morales (ADA) nurse states "We do not assign Imp. Assistants to Wheelchairs needs." Further acts or omissions to Sabotage by and through gang member, inmate medical, Classification orderlies and innumerable gang members fallacious assertions to plant negativity in manner of medical care.

58. Respondents have subversive corrupted employees, rampant nepotism and cronyism and are unmanageable in the uncontrolable subclass deeds.

12.

## (F)   Class Action Allegations.

59   Petitioner brings this proposed class action pursuant to the provisions of Federal Rules of Civil Procedure, Rule 23. Further, Title 28 United States Code § 2241 (c)(3) Habeas Corpus Act.

60   Petitioner(s) seek DECLARATORY RELIEF PURSUANT TO 28 USC. § 2201 ; INJUNCTIVE relief Pursuant to 28 USC. § 2202; on behalf of proposed Class Members, and Sub class members similarly situated now and future housed at Dade Facility (#4963), who are aged 60 and over who suffer adverse affects from advanced age and have one or more of the chronic serious diseases that qualifies as clinically—medically vulnerable to coronavirus (Covid 19), and will not likely survive another virus or disease complication leading to serious bodily injury or death

### G   Clinically-medically-vulnerable Class

61   Pulmonary-Respiratory chronic lung disease(s) asthma, chronic obstructive pulmonary disease (C.O.P.D), history of respiratory failure resulting in ventilator - respiratory invasive procedure; history of pulmonary respiratory pneumonia;

62   Liver diseases (Hbv, Hcv) leukemia, cancer, or pneumonia complications

63   Endocrine deficiencies, prolonged use of corticosteroids, immune weakening medication use, HIV/AIDS, ARC,

64   Serious heart disease or related conditions

65   Immune deficiencies, or immune weakening medication use

66   Diabetes, or dialysis use, Kidney disease or failures, Serious excess obesity of or over 40% Body Mass Index (Bmi)

F-6

(H) (H)        Sub class Proposed Medically Vulnerable

67    Petitioner(s) allege this subclass are suffering one or more of the conditions diseases, (Ed. Pg. 13, subpara. 61 < 66) and are particularly Vulnerable to Covid 19, and serious bodily injury and/or death if left to raging Covid 19 in DCI or any Florida Department of Corrections facility without the courts immediate relief by Habeas Corpus Writ for the immediate release within 24 hours of filing.

68    Due to Covid 19 pandemic virus, and severe overcrowding, understaffing of experienced personnel, gang violence deaths, and inmate gang members Unregulated smoking bath salts, or other synthetics laced (Supercharged - with formaldehyde or wasp spray Neurotoxins, close proximity second-hand lung assault injuries day and night — Respondents cannot provide rational realistic relief for this or other class, or inmate population and Violate the cruel and unusual punishments Clause of The Eighth Amendment United States Constitution, Bill of Rights.

69    Covid 19 Virus is airborne and extremely deadly; which have serious consequences for deprivation of Petitioner's Fundamental right to be provided basic human need of reasonable meaningful safety from serious bodily harm or death imposition beyond the sentencing Court intentions in "a term of years". Petitioner(s) allege this particular set of objective and subjective facts "pose the unreasonable risk of future harm" Helling v. McKinney, 509 U.S. 25, 31-32. (1993). Those "conditions pose an unreasonable risk of future harm, as well as those that are currently causing harm" Id. 33

70    Moreover, as stated supra and ante. Respondents, by and through Current personnel (corrupted) pose a significant amount of deliberate indifference both occuring now, and future, intent to continue violations of Federal Rights, by repeated failures to act, which is unreasonable wanton infliction of pain. Hadix v. Johnson, 367 F.3d 513, 526 (6th Cir 2004); See, Farmer, 511 US at 842

14.

## (I) Argument

71   Petitioner(s) in custody amid Covid 19 outbreak within Dade CI. Violates the Eighth Amendment prohibited conduct or imposition of "cruel and unusual punishments"

72   "Correction officials have obligations under Federal law, Constitution, treaties, to protect prisoners from substantial immediate risk of harm" Farmer v. Brennan, 511 U.S. 825, 828 (1994) i.e., "must provide basic human needs food, safety from immediate risk of harm, and must take reasonable steps to provide humane conditions of confinement" Id, 832. (internal quotations omitted)

73   "This obligation also requires officials to address prisoner's medical services needs on serious needs even where the medical services personnel refuse to do so." Estelle v. Gamble, 429 U.S. 97, 104; Brown v. Plata, 563 U.S. 493, 531-32 (2011) Flanoy v. Bonn, 604 F.3d 249, 255 (6th Cir. 2010) in accord Helling v. McKinney, 509 U.S. 25, 28, 35 (1993) "stated a claim under 8th amendment where prison officials required prisoner to live cell with high levels of second hand cigarette smoke of chain smoker Cf., Palacio v. Hofbaur, 106 Fed. Appx. 1002, 1005 (6th Cir 2004) "in prexisting medical conditions exposure ... "
        (See, Petitioners Declaration pg. 3, para. 7-11.)

74   Officials obligation requires protection of Petitioner from the infectious Covid 19 viral infection, "Medical professionals may not wait until (Petitioners test positive to Covid 19 antibodies) after an outbreak has begun" (as currently at DCI womens and mens prison) McKinney, 509 U.S. at 33,34, holding, "the Eighth amendment protects against future harm" to Petitioners, it is not a mere proposition, it would

"... be odd to deny an injunction to (Petitioners) who plainly prove the unsafe, life-threatening condition in their prison on the ground that "nothing happened yet" Stefan v. Olsen, 497 U.S. Fed.Appx., 568, 577 (6th Cir 2012) quoting Williams, USDC (NDOH) 4:20-cv-794 (4/13/20).

75   Prison officials violate this affirmative obligation by showing deliberate indifference to the substantial risk of serious harm" Farmer Id. at 828. "Deliberate indifference has two components to it objective and subjective" Villegas v. Metro Govt of Nashville, 709 F.3d 563, 568 (6th Cir 2013)" [T]he objective component is met upon a showing that a (Petitioner) faced a substantial risk of serious harm and that such a risk is one that society chooses to not tolerate" Id. at 869. The subjective component is met upon a showing that a (Petitioner) detainee faced a substantial risk of serious harm and that such a risk of that subjective component is satisfied when an official has (1) subjectively perceived the facts from which to infer substantial risk to the prisoner (2) did in fact draw the inference, and (3) then disregarded that risk" Santiago v. Ringle, 734 F.3d 585, 591 (6th Cir 2013) (citations and internal quotation marks omitted), such inferences may be inferred from circumstantial evidence, including "the very fact that there risk was obvious," that official knew of a substantial risk of serious harm that society chooses not to tolerate" Id. at 569, drew an inference from that fact and disregarded that risk" Santiago, Id at 591; Dominguez v. Corr. Med Serving 555 F.3d 543, 550 (6th Cir 2009) quoted

76   Petitioners allege when Covid 19 was nationwide confirmed on World News CBS news that "the Covid 19 is a Global Pandemic" Respondents medical personnel of Centurion, LLC Health Care Provider and Respondent(s) as an actual factor, exhibited deliberate indifference by ignoring conditions of confinement for clinically medically highly vulnerable, allowed heightened risk to lead to serious illnesses and deaths — taking no immediate rational preventive measures or steps to protect the most vulnerable subclass Exposing that risk.

in <u>Hutto v. Finney</u>, 437 U.S. 678, 682-85 (1978) ("recognizing the need for remedy where prisoners were overcrowded into cells and some had infection"

(J)   THIS PETITION IS AN APPROPRIATE Vehicle to REMEDY Violation of CONSTITUTIONAL Law

77. PETITIONER(S) Allege that RESPONDENT'S failure to PREPARE steps or urgent speed mitigation efforts with Centurion.LLC MEDICAL EXPERTS and such other preemptive actions to delay Covid 19 viral infections in the prison system promptly and before the initial reported, or certainly immediately after the first prison positive inmate sickness from Covid 19, such as hygiene upgrade prophylactic methods and reliable chemical antimicrobial antiviral compounds i.e. Isopropyl alcohol®, Lysol®, Texize® or other industrial grade effective virus eradication measures daily repeatedly — controlled and supervised by qualified medical experts — is a form of lack-classical deliberate indifference, that delays, prevents and denies a standard of health care the general public would reasonably require for Petitioners.

78. The court has authority to order immediate categorical release of the elderly and/or most vulnerable, held in such violations of the proscribed conduct that violates the U.S. Const, Eighth Amendment. 28 U.S.C. § 2241 (c)(3), accord. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 485 (1973) "It is clear not only from the language of 28 USC, § 2241 (c)(3), and § 2254, but also from common law history of the writ, that the essence of habeas corpus is an attack by a person in custody (Petitioners) upon the legality of that custody" <u>Peyton v. Rowe</u>, 391 U.S. 54, 67 (1968). "Section 2241 (c)(3) can afford immediate release for claims — other than those challenging the sentence itself" cf. <u>Ziglar v. Abassi</u>, 137 S.Ct 1843, 1862-1863. (2017) "Indeed, the habeas remedy if necessary, required its use (that) would provide a faster and more direct route to relief

17                                                                    J

... than a suit for money damages." A successful habeas petition would have required officials to place (Petitioner's subclass) (or Class) in a less restrictive condition immediately.

## (K) Proposed Class Sub-Classes (M.D.S.O.)

79   The subclass proposed includes but is not limited to mentally disabled offenders (MDSO) who are targeted by certain corrupt personnel and gang affiliated inmates, are daily harrassed, abused, extorted for Rico funding subjected to sexual predator assaults, beatings and deadly weapons aggravated assaults and battery, and sexual rapes ("turned out") by pervert predators. This subclass are of serious mental disorders and highly vulnerable due to this disability, and to self-care deficits and are incapable of self defense, too timid to report such acts or threats. — Unregulated and not proseal when reported to officials → a systemic pattern or practice of deliberate indifference to serious medical needs for mental health in patient health care. Petitioner's subclass

## (L) Proposed Sub Class (Medically Clinically Vulnerable)

80   This subclass proposed are the most Medically Clinically Vulnerable to the Covid 19 virus, the highest priority for immediate release from custody by Writ of Habeas Corpus. Petitioner undersigned seeks Class Representative status to which Petitioner also is classified, Respiratory-Pulmonary, Meteira Stage 4 liver ascites, elderly mid-Saunty, immunoCompromised superinfecta HBV-HCV post-Epclusa complications, hematemesis esophageal, gastric varices ruptured episodes, Unresectable multiple incarcerated hernias, Sliding hiatal hernia choking spasms swallowing, Multiple ischemic strokes, heart attacks, past corona virus SARS (Covid 19 infections, neuro and self care deficits, permanently wheelchair bound, gastric ascending transverse, descending polyps 10 yrs severe ALD cholestatic bile salts reuptake intractable prunitus, and numerous lifelong complications.

18                                                                K.2

81          (m)    Proposed Class Members Subclasses

Petitioner(s) bring this proposed class Action pursuant (to) Federal Rules of Civil Procedure, Rule 23; and Title 28 USC. § 2241 (c) (3) for emergency expedited relief Writ of Habeas Corpus; individually and/or on Behalf of all others, current and future (housed by Florida Department of Corrections at Dade Correctional Facility #463, 19000 SW 377th Street, Miami Dade County at (Homestead/Florida City)    Similarly situated.

82   Petitioner (s) (R.L.S.M) Bud Miller, Seeks TO REPRESENT THE Proposed Class and Subclasses qualified for Clinically Medically Vulnerable Class, MDSO Subclass, And the General Class.

83   the Clinically Medically Vulnerable Subclass consists of, but is not limited to only these chronic diseases or Complications As the following.

immunocompromised or immune deficiencies
Serious respiratory pulmonary COPD Asthma, bronchitides, respiratory acute failures
Liver stage 4 Meteoric cirrhosis, ascites, portal hypertension, cancer
Serious heart disease, and/or complications
blood coagulation disorders, low platelets, prothrombin time ↑
frequent use of corticosteroids
HIV/AIDS
MORBIDLY Obese – bodily mass index (BMI) greater than 40%

19

## (F)   CLAIM FOR RELIEF

84  Petitioner(s) allege that Respondents (DCI) openly violate virtually every aspect, regulation, under Federal law, Constitution, or treaties. The unconstitutional condition of confinement of exposure to Corona virus, Covid 19, is a violation of Eighth amendment of the U.S. Constitution; due to no protection from Covid 19, by safety concerns

### First Claim

85  "An attack upon the _execution_ of sentence (by Respondents personnel) as opposed to attack on the validity of the conviction itself, is properly cognizable in a 28 U.S.C § 2241 (c) (3) habeas petition." United States v. Jolil, 925 F.2d 889, 893-94 (6th Cir 1991); See also, Solano-Mendez v. Federal Bureau of Prisons, No. 17-1019, 2018 WL 6982570 (6th Cir) 9/24/2018

### Second Claim

86  "Specialized medical disability needs" are protected by relevant case authority, federal and state, those needs cannot be protected or provided by Respondents, when a global pandemic Covid 19 runs throughout the United States, as well as the State of Florida, and Dade Facilities (both male and female), and no confirmed, well researched, and CDC approved vaccine, defense, drug or antiviral, is available anywhere in the next 18 months. Far too late for Petitioners Medically Vulnerable as Dade _has_ infected.

### Third Claim

87  Many of the medically vulnerable of the subclass proposed also require hospice and/or attricious nursing and specialized physician specialists again an elephant in the room - no availability of hospice centers, and the second elephant is being a real contract "Centurion,LLC ®" health care provider who "couldn't care less", elderly suffering a plethora of complications, disabilities, nerve defects, and self-care limitations. As such, Respondents cannot provide protection from Covid 19, from gang/corrupted staff "Racketeering Influenced Corrupt Organization" (Rico), and are targets for easy daily abuses See attached, Declaration(s). This

20.

methodology of prison operations, certainly will fail scrutiny of higher level federal authorities — upon their own exclusive investigation of agency operations, personnel, management infrastructure, under Eighth amendment scrutiny as current procedures, and a second throwaway log book, continues to present a "substantial risk of serious harm (compounded by many prior life attempts) to health and safety *Farmer v. Brennan*, 511 US at 88; *Estelle v. Gamble*, 429 US at 104. This harm is immediate, substantial and compounded with Covid 19 immediate harm "death threat" at the backdoor presently.

## Fourth Claim

88. The pandemic Covid 19, virus is particularly rapidly fatal to most who are infected (prisoners are given the standard double ply (state blue pants cloth) shade yard mechanic approach, are <u>unbreathable</u> except sucking air in the top, bottom or sides, for an airborne virus that attacks the Respiratory and heart with swift precision and further stalking bodies. Masks provide tell a tale of lack of genuine concern for prisoners by some who fabricate them as no filter to block inhalation breaths viz. simply suck outer air (with virus) into lungs. definitively, a certain infection arising on the moon's first light.

89. Therefore, Petitioner allege Respondents personnel "have failed to take meaningful steps or actions to prevent the Proposed Classes from immediate substantial risk of harm or death — moreover in a third elephant in the room — extremely dangerous overpopulation, that is clearly insufficient in number of security personnel.

90. Mitigation efforts were taken as an afterthought (await virus surrounding the perimeter fences for easy entry — which it will know, but we won't

## Fifth Claim

91. Environments that are fundamentally incompatable with CDC-USDOH directive and medical protocols, violate the "cruel and unusual punishments" by not only a "nod n' wink" "touching" both sides, laced with formaldehyde and or wasp spray — neurotoxins sprayed on coverage by no less than twenty (20) "gassed out" inmates in groups with both sides within 2 to 10 feet, obviously manufactured and provided by personnel —

92 (60) "This obligation requires officials to protect (prisoners) from infectious diseases" (like Covid 19) "...officials may not wait until some one tests pos t for the virus  Mc Kinney, 509 U.S. at 33, 34

93 (61) See also, Farmer, 511 U.S. at 833  ..."Having stripped prisoners of virtually every means of self-protection, and having foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." By then it's too late. Here, that one individual new gain could rapidly be exposed, without symptoms of covid 19, could infect untold numbers of medically Vulnerable elderly disabled — before displaying symptoms.

94 (62) "Prison officials violate an affirmative obligation where they're shown deliberate indifference to a substantial risk of serious harm" Farmer, 511 U.S. 828. That objective element is shown upon a showing a substantial risk of serious harm." Villages v. Metro Gov't of Nashville, 709 F3d 563, 568 (6th Cir 2013) and Florida cases Allowing ... to research under guaranteed sentence

95 (63) Regarding impending Covid 19, it matters not whether today tomorrow, next week or next month — a clearly serious life threat lurks in the darkness of South Florida — time in this very real pandemic is of the essence (and of paramount need for relief.

96 (64) Accordingly, Respondents' years long failure to protect Brad Miller on R+B Ctr. arrival from Hepatitis B (HBV) refusing Interferon — to prevent Co-infection of HCV, and later refusal to reasonably and meaningfully treat the complications and yet still again refuse the antiviral treatment "Epclusa®" did not provide, offer, or dispense to Petitioner Epclusa® until Stage 4 Interval (Index) "ascites" — far too late to be of life-extending or therapeutic, prophylactic health care, knowing for years Id. been maliciously deliberately been subjected to retribution for being a mentally disordered sex offender since age 9 or 10 — due to neurosciential 'blunt force trauma to the prefrontal orbital cortex paralimbic substrat'

97   Even if and when a reliable vaccine is produced it will take another year to get sufficient quantities to distribute throughout each state and prisons. The Covid 19 will continue to exponentially infect prisoners in the vulnerable class."

98   Public health experts are recommending immediate categorical mass release of medically vulnerable class, who are the most vulnerable, and high priority are those with respiratory disease, and who are immune-compromised.

99   An order of categorical immediate release of the Class of subclass medically vulnerable will have an impact on extreme overcrowding, the understaffing management issues, security, and safety of the subclass by allowing for specialized medical disability access to urgent need for specialists health care and treatment and restoration of civil rights.

100   Deciding that "the (only reasonable and meaningful relief resolution) "release is the only acceptable option" Wilson v. Williams, USDC (N.D. Ohio) No. 4:20-CV-00794 December fn 139, pp. 76, "the court noted that "even lengthy prison sentences "did not include incurring great unforeseen risk of severe illness or death" The Elkton FBOP one, Attorney General " recognized the significant level of infection suggested immediately the involved vulnerable prisoners to home confinement" fn. 139, Wilson.

101   Atypically many officials are slow, methodical piecemeal in such a critical phase of this global pandemic virus is unreasonably inadequate and not mitigation to slow the deaths and viral spread in DET, demonstrates lack of genuine concern, lack of expertise or resources to implement and save lives of the vulnerable class.

102   Even before President Trump signed The Coronavirus Aid, Relief and Economic Security Act (CARES), the Secretary 'had requisite authority to release prisoners' in-light of Covid 19 Pandemic

103   With "1.5 million Covid 19 Virus (CBS News 5-18-2020) and over 85,000 deaths in the United States" the subclass vulnerable will have dire consequences until and unless the 28 USC § 2241 (c)(3) relief is granted for medically vulnerable subclass.

104  (42) Petitioner Bud Miller (don't drink) [sic], AND PROPOSED CLASS members have a requisite personal interest in the outcome settlement of the issues of law and fact of this action for Writ of habeas corpus correlarly to Class Action either/or, and will fairly and adequately protect the interests of the proposed Class and Sub Class. Petitioner has no adverse interests to interests of the proposal class, Petitioner is actively seeking pro bono "American Civil Liberties Union" Counsel with expertise and success in prosecution of civil rights litigation — if U.S. Postal Mail Certified return receipt is any caution to misdelivery tacticians. It is contemplated Counsel will have no Conflicts, or know of no Conflicts of class members or with counsel and proposed class members.

105  (43) Respondents generally have acted adverse to civil rights of proposed Class/Subclass members; this action seeks to obtain the Court's declaratory and injunctive relief and for such other further relief the Court deems just and reasonably required.

106  (44) Petitioner(s) therefore seek Class Action Certification under Rule 23 (b)(2). The requirements of Rule 23 (b)(1) are satisfied because a prosecution of separate actions would create a risk of inconsistent and variances adjudications, with respect to individual class members — that would establish incompatible standards of conduct — for the party opposing the proposal classes.

        <u>Petitioner's Note for The Court and Parties</u>

107  (45) Nothing in the section allegations regarding the current state of 'prison conditions' of confinement should be, or is not intended to be, a consideration of attack on the conditions — but is set forth to inform the Court of the level of mismanagement — and thereby inability to deal with the one shot only control and protection from 8th amend. cruel and unusual punishment of COVID 19 global pandemic that is quite dangerous — especially to 72 year elderly with stated health genuine issues of law and fact concerns. Therefore the Writ may issue.

111. (50) Respondent issued memorandum to facilities and staff and to prisoners to (1) "maintain at all times social distancing of six (6) feet distance between other persons", (2) "Wear a PPD mask at all times around other persons environments" (3) "Wash your hands thoroughly and do not touch your face"

112. (51) Petitioner nor others could conciously keep, maintain, or obey, the CDC warnings to keep six (6) feet distance — in a prison of PDDC. due to extreme overcrowding and extremely cramped [sic] "ADA dorms" with numerous Training Academy (TA's) not yet experienced.

113. (52) Today May 04, 2020 18 inmates were recieved from transfer from (one) facility — none had a social distance, none had a mask, and its quite possible at least one (1) has been exposed to (Covid) 19. That one (1) person could infect Dade facility rapidly, due to constraints on space Inter alia. viz a viz, an impossible threat on life to Petitioner and the medically vulnerable sub class proposed.

114. (53) A conclusion can rationally, reasonably be inferred from objective facts (1) Respondents cannot control or manage the "Elephant in the room" neurotoxin smokers, Violence, or discipline (2) reasonably and safely control a Virus of 300 < 500 nanometers that only an electron microscope can visualize.

115. (54) Immediate Habeas Corpus Writ is Needed to prevent the danger, imposed — beyond Respondents professial skills and at present a need to protect the most medically Vulnerable from unnecessary suffering and loss of life. The exponential increase daily, of Covid 19, Clearly shows a reasonably prudent man that no Vaccine is yet found in research to prevent Petitioners suffering and death — especially to immuneCompromised Any mother solid logic on any of Respondents Power can stop Covid 19 from infecting a raging fire upon ADA elderly disabled need for emergency protectain.

Richard L. Stearns McAfee
DC DX126563, DCI #463
14000 S.W. 377th Street
Florida City, Florida 33034-6499

Privileged & Confidential
HIPPA Confidential
Legal Mail

(B) Rom. 6:23   Evangelism

Office of the Clerk
United States District Court
Southern District of Florida
400 North Miami Avenue 87159
Miami, Florida 33128-7716

Legal Mail
Received
MAY 29 2020
Dade C.I.

MAILED FROM A
STATE CORRECTION
INSTITUTION
FLORIDA CITY